IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRIN SAVOY                          :

                                  :

   v.                             : Civil Action No. DKC 09-1254

FEDERAL EXPRESS CORPORATION           :
LONG TERM DISABILITY PLAN
                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Employee Retirement Income Security Act are (1) Defendant's motion for summary judgment (Paper 11), and (2) Plaintiff's cross-motion for summary judgment. (Paper 14). For the reasons that follow, Defendant's motion for summary judgment will be granted, and Plaintiff's cross-motion for summary judgment will be denied.

**I.  Background**

The following facts are undisputed unless otherwise noted. Plaintiff Darrin Savoy became a full-time employee of Federal Express Corporation on March 16, 2003. On February 15, 2006, Plaintiff filed a claim for short-term disability benefits, which alleged that he had become disabled as the result of a car-jacking and assault. Plaintiff received short-term disability benefits from the Federal Express Corporation Short Term Disability Plan from February 10, 2006 to June 18, 2006 and

from June 29, 2006 to August 20, 2006. Plaintiff then applied for and received long-term disability benefits from Defendant, Federal Express Long Term Disability Plan, from August 21, 2006 to August 20, 2008. Plaintiff received these long-term benefits for an "occupational disability," which Defendant defines as "the inability of a covered employee, because of a medically-determinable physical or functional impairment or a medically-determinable mental impairment (other than an impairment caused by a chemical dependency), to perform the duties of his regular occupation." (Paper 11, at 4).

Defendant limits long-term "occupational disability" benefits to a period of two years. To receive long-term disability benefits for longer than two years, a covered employee must be "totally disabled." Defendant defines "total disability" as "the complete inability of a covered employee, because of a medically-determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a chemical dependency), to engage in any compensable employment for twenty-five hours per week." (Paper 1, Attach. 5). After receiving "occupational disability" benefits for two years, Plaintiff applied for "total disability" benefits.

2

In a letter dated July 11, 2008, Aetna Life Insurance Company ("Aetna"), Defendant's claims paying administrator, notified Plaintiff that his claim for long-term disability benefits for a "total disability" was denied. (Paper 1, Attach. 4). To make its determination, Aetna reviewed the documentation submitted by Plaintiff's medical providers, which included: an attending physician statement from Dr. Khosrow Davachi, specialty letters, office notes, a work status note, and an attending physician statement from Plaintiff's treating neurologist, Dr. Stuart J. Goodman. (*Id.*). Aetna also reviewed all of the medical information in Plaintiff's file related to his previous disability claims, and had Dr. Mark Sementilli, a neuropsychologist and psychologist, conduct an independent neuropsychological evaluation of Plaintiff. This evaluation suggested that Plaintiff's true deficits could not be determined due to symptom exaggeration and suboptimal effort. (Paper 1, Attach. 11). Additionally, Aetna had Dr. Elana Mendelssohn, a psychologist, conduct a peer review of Plaintiff's file. (Paper 12, Attach. 2, at 51). Dr. Mendelssohn found that the clinical information did not support Plaintiff's claim for "total disability." (*Id.*). Finally, Dr. Vaughn Cohan, a neurologist, conducted a peer review of Plaintiff's file and

came to the same conclusion as Dr. Mendelssohn. (Paper 12, Attach. 3, at 63).

Based on the information in Plaintiff's file, the independent neuropsychological evaluation, and the two peer reviews, Aetna determined that there were "insufficient objective findings to support a total disability from any occupation" and that "the documentation provided did not support a functional impairment that would preclude [Plaintiff] from engaging in any compensable employment for a minimum of 25 hours per week." (Paper 1, Attach. 5).

On January 5, 2009, Plaintiff appealed Aetna's decision to the Aetna Appeal Committee ("Committee"). (Paper 1, Attach. 7). In support of his appeal, Plaintiff submitted additional reports and notes from Dr. Goodman (Paper 1, Attach. 13), and a vocational assessment conducted by Janine Preston, a vocational consultant. (Paper 1, Attach. 16). The vocational assessment concluded that Plaintiff's "present skill levels along with the medically documented disabilities – makes him not a viable applicable [sic] to acquire employment in the Maryland – Washington D.C. labor markets." The Committee reviewed the additional information provided by Plaintiff, as well as all of the medical documentation in his file. The Committee evaluated the two peer reviews conducted during the initial review, and

ordered a third peer review that was conducted by Dr. Christopher Loar, a board certified psychiatrist and neurologist. Dr. Loar's findings were similar to those of the two other peer reviews. (Paper 12, Attach. 3, at 67). In a letter dated March 17, 2009, the Committee denied Plaintiff's appeal. (Paper 1, Attach. 8). The Committee "considered all submitted documentation, noted the conclusions of the peer physicians, and determined that there are no significant objective findings to substantiate that a functional impairment exists that would preclude work in any compensable employment for twenty-five hours per week." (*Id.*).

On May 13, 2009, Plaintiff commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, challenging Defendant's denial of his disability benefits. (Paper 1). On November 16, 2009, Defendant filed a motion for summary judgment. (Paper 11). On December 17, 2009, Plaintiff filed a cross-motion for summary judgment. (Paper 14).

**II. Standard of Review**

It is well-established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty*

5

*Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party, then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the

burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.), *cert. denied*, 540 U.S. 822 (2003) (internal quotation marks omitted); see also *havePower, LLC v. Gen. Elec. Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003)(citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3d ed. 1983)). The court reviews each motion under the familiar standard for summary judgment. The court

must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

**III. Analysis**

The parties agree that there is no genuine issue of material fact in this case, and thus the court must decide which party is entitled to judgment as a matter of law.[1] Defendant, a long term disability plan, is governed by ERISA. Pursuant to Section 502(a)(1)(B) of ERISA, a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

In reviewing a plan administrator's decision to deny benefits, the court must first determine whether the plan gives the administrator discretionary authority to construe uncertain terms and determine eligibility for benefits. *Booth v. Wal-Mart*

---

[1] In his response to Defendant's motion for summary judgment Plaintiff contends that the pleadings, exhibits, and administrative record demonstrate a genuine issue of material fact. (Paper 14). In his attached memorandum of law, however, Plaintiff concedes that there is no genuine issue of material fact. (Paper 14, Attach. 2, at 9).

*Stores, Inc.*, 201 F.3d 335, 340-41 (4th Cir.2000); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan does not give discretionary authority, the court reviews the employee's claim *de novo* as it would any other contract claim – by looking to the terms of the plan and other manifestations of the parties' intent. *Booth*, 201 F.3d at 341; *Firestone*, 489 U.S. at 112- 13. If, on the other hand, the plan by its terms confers discretion on the administrator, the court reviews the administrator's decision for abuse of discretion. *Booth*, 201 F.3d at 341; *Firestone*, 489 U.S. at 111.

Here, the plan allows the Committee to "interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to all matters properly brought before it pursuant to this Section 5.3, including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan." (Paper 1, Attach. 3). The parties agree that this language grants the administrator discretionary authority to make eligibility determinations. (Paper 11, Attach. 1, at 5; Paper 14, Attach. 2, at 13). Accordingly, Defendant's decision will be reviewed for abuse of discretion.

Under the abuse of discretion standard, an administrator's decision will not be disturbed if it is reasonable. *Booth*, 201

F.3d at 342. The United States Court of Appeals for the Fourth Circuit has set forth a nonexclusive list of factors a court may consider when determining whether a plan administrator's decision is reasonable:

> (1)[T]he language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of the discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43.

Defendant contends that the decision to deny Plaintiff benefits was reasonable. Defendant maintains that Aetna did not face a conflict of interest when denying Plaintiff's claim because Aetna only makes eligibility determinations, it does not fund or insure the plan. Defendant also argues that the decision was based on "a deliberate principled reasoning process" and is supported by substantial evidence. (Paper 11, at 19). Defendant notes that the Committee considered Plaintiff's entire file and ordered an additional peer physician review before making its decision. (*Id.* at 20). It also notes

that all three peer reviews found that Dr. Goodman's diagnosis was not supported by any medically-determinable evidence as required by the plan. Defendant maintains that the vocational assessment does not contradict the Committee's decision because the long-term disability plan "requires medically-determinable evidence of a physical impairment" and "has no vocational or transferable skills requirements or standards." (*Id*. at 23). Defendant further asserts that the Committee had no obligation to order its own vocational assessment. (*Id*. at 24).

Plaintiff responds that the decision to deny him benefits was not objectively reasonable, nor based on substantial evidence. Plaintiff argues that Aetna faced a conflict of interest when evaluating his claim. Plaintiff also contends that Dr. Goodman's reports and the vocational assessment clearly establish that he is "totally disabled." Plaintiff maintains that "the only report supporting Defendant's position that Plaintiff is capable of engaging in employment for 25 hours per week is the peer review of Dr. Christopher Loar," which Plaintiff asserts is "countered by the opinions of Plaintiff's treating neurologist, Dr. Goodman, the vocational consultant, Janine Preston and even the findings of Dr. Sementilli." (*Id*. at 17). Plaintiff also points out that Dr. Loar did not examine him personally, and argues that he should have been given the

11

opportunity to submit evidence in opposition to Dr. Loar's findings. Finally, Plaintiff maintains that the Committee should have referred Plaintiff for a functional capacity evaluation or employability assessment, and that by not doing so it failed to conduct a full and fair review of his claim.

A plan administrator faces a conflict of interest when it "serves in the dual role of evaluating claims for benefits and paying the claims." *Champion v. Black & Decker, Inc.*, 550 F.3d 353, 358 (4th Cir. 2008). Here, Federal Express Corporation funds and administers the long-term disability plan, but does not make benefit eligibility determinations for the long-term disability plan. Aetna does not fund or administer the long-term disability plan, but provides claim administration services by paying claims on behalf of the plan. Plaintiff maintains that Aetna faced a conflict of interest because Defendant retains the right to replace Aetna and "Defendant's contributions to the trust fund are directly determined by the extent to which the claims paying administrator finds a claimant eligible for benefits." (Paper 14, at 12). Plaintiff cites *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008) to support his contention, and notes that the defendant insurance company in *Glenn* faced a conflict of interest. Plaintiff fails to acknowledge, however, that the insurance company's conflict of

interest was created because the company served the dual role of plan administrator and insurer, and not because the party who funded the plan retained some power over the claims paying administrator. *See id.* at 2348. Here, Aetna was the claims paying administrator, but did not fund or insure the plan. Therefore, Aetna did not face a conflict of interest when evaluating Plaintiff's claim.

Additionally, Defendant's decision was based on a deliberate reasoning process and is supported by substantial evidence. The Committee conducted an in-depth review of Plaintiff's medical documentation by evaluating the findings of Dr. Goodman, two peer reviews conducted during the initial review, the peer review conducted by Dr. Loar, and the independent neuropsychological examination. The Committee ultimately sided with the opinions of Dr. Mendelssohn, Dr. Cohan, and Dr. Loar, all of whom examined Plaintiff's file, which included the findings of Dr. Goodman, and determined that Plaintiff did not suffer from a "total disability." The Fourth Circuit has found that it is not an abuse of discretion for an administrator to adopt the opinion of one medical professional over another.[2] *Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301,

---

[2] Plaintiff relies on *Stup* to support his argument that the evidence Defendant relied on was not substantial. In *Stup*,

308 (4th Cir. 2004). Therefore, the decision-making process was reasoned and principled and was supported by adequate evidence.

Plaintiff's assertion that he should have been given the opportunity to submit rebuttal evidence in opposition to Dr. Loar's findings is also without merit. Plaintiff relies on *Skipp v. Hartford Life Insurance Co.*, Civil No. CCB-06-2199, 2008 WL 346107, at *31 (D.Md. 2008), where the court determined that the defendant in a similar suit was under no obligation to provide an expert's report obtained during the appeal to the plaintiff before the appeal was denied. In *Skipp*, the court noted that there was nothing in the expert's report that would have caught the plaintiff off guard, "save perhaps for his ultimate conclusion." *Id.* at *33-34. Plaintiff contends that Dr. Loar's report "provides for the first time an opinion that the Plaintiff is 'capable of engaging in compensable employment of a minimum of 25 hours per week.'" (Paper 14, Attach. 2, at

---

however, the plaintiff offered "overwhelming and uncontradicted evidence" that she suffered from two specific medical conditions that would entitle her to long-term disability benefits. *Id*. The Fourth Circuit found that it was unreasonable for the defendant to rely on "tentative and ambiguous evidence" that contradicted the plaintiff's claim. *Id*. at 309. Here, Plaintiff's evidence, which consists primarily of his treating physician's findings, is directly contradicted by the peer reviews, which are neither tentative nor ambiguous. Furthermore, in *Stup,* the claims administrator was also the plan's insurer and therefore had a financial incentive to deny the claim. Here, as previously mentioned, Aetna had no financial incentive to deny Plaintiff's claim.

20). Plaintiff argues that this is new factual information that he should have had access to before the final decision. Dr. Loar, however, did not reference any new factual information related to Plaintiff's condition. Furthermore, Plaintiff should not have been shocked by Dr. Loar's findings because Dr. Cohan's peer review, which Plaintiff possessed before the appeal, specifically stated that "claimant would be capable of performing any compensable work for a minimum of 25 hours per week." (Paper 12, Attach. 3, at 65). Therefore, Dr. Loar's peer review presented information and opinions that were already available to Plaintiff, and Defendant had no obligation to provide Plaintiff with copy before the appeal was denied.

Finally, the Committee was under no obligation to order a functional capacity evaluation or employability assessment of Plaintiff. Plaintiff relies on *Tate v. Long Term Disability Plan for Salaried Employees of Champion Int'l Corp. No. 506*, 545 F.3d 555 (7th Cir. 2008) to support his contention that Defendant failed to conduct a full and fair review by not ordering an assessment. This case, however, is from the United States Court of Appeals for the Seventh Circuit and is not binding on this court. Confronting a similar situation, Judge Motz explained:

> [T]his Court finds no evidence that the Fourth Circuit has held that a vocational assessment is needed in the course of a full and fair review. *Accord Piepenhagen v. Old*

15

> *Dominion Freight Line, Inc.*, 640 F.Supp.2d 778[, 789], 2009 WL 528625, at *9 (W.D.Va. 2009) ("Not a single court has held that vocational evidence is required per se."). Because no vocational assessment is required and MetLife nevertheless reviewed the report by the vocational consultant of Plaintiff's choice, the Defendant's decision not to secure an additional vocational assessment does not show an abuse of discretion. *See, e.g., Krajewski v. Metropolitan Life Ins. Co.*, No. RDB 08-2406, 2009 WL 2982959 at *7 (D.Md. 2009)("Considering *Piepenhagen* holds that some benefits determinations require no vocational analysis in the first place, and that MetLife reviewed the report by the vocational consultant of [Plaintiff's] choice, [Plaintiff's] argument fails.").

*McDonald v. Metropolitan Life Insurance Co.*, Civil No. JFM 08-02063, 2009 WL 3418527, at *5 (D.Md. 2009). Like the defendant in *McDonald*, the Committee reviewed Plaintiff's vocational assessment even though it was under no obligation to do so. The Committee's decision not to order its own assessment was therefore consistent with the requirements of ERISA and the plan.

In light of the above discussion, Defendant's decision was reasonable and based on substantial evidence. Defendant did not abuse its discretion when denying Plaintiff's claim.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted, and Plaintiff's cross-motion for summary judgment will be denied.

                                             /s/
                              DEBORAH K. CHASANOW
                              United States District Judge